**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

NO. 97-31081
Summary Calendar

---

ANTOINE J. HAWKINS, ET AL.,

Plaintiffs

ERNEST SMITH

Plaintiff-Appellant

VERSUS

AM/GROWMARK RIVER SYSTEM, INC.,

Defendant/Third-Party Plaintiff/Appellee

VERSUS

QUALITY FAB AND MECHANICAL CONTRACTORS, INC.,

Third-Party Defendant/Appellant Appellee

---

Appeal from the United States District Court
for the Eastern District of Louisiana
(94-CV-2210-D)

---

August 21, 1998

Before JOLLY, BENAVIDES and PARKER, Circuit Judges.

PER CURIAM[*]

## I.

### FACTS & PROCEDURAL HISTORY

In June of 1993, ADM/Growmark River System, Inc., (hereinafter

"ADM") needed someone to demolish and remove two grain dryer units

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

at its Destrehan, Louisiana, facility.  Quality Fab & Mechanical Contractors, Inc., (hereinafter "Quality Fab"), which had regularly performed fabrication and maintenance services at ADM's Destrehan facility, submitted a written proposal and price quotation ($23,500) for the demolition project.  Quality Fab was orally awarded the job.

During the course of the demolition on June 3, 1993, a flash fire occurred, injuring Ernest Smith and Antoine Hawkins.[2]  Smith and Hawkins sued ADM.  ADM filed a third-party complaint against Quality Fab based on an indemnification agreement signed on behalf of Quality Fab by its President, a Mr. Bourgeois, on April 27, 1992.[3]  By that agreement, Quality Fab agreed in pertinent part to:

> Indemnify, defend, and hold Company .... harmless from and against any and all claims, suits, causes of action, liability, damages, judgments or expenses including, but not limited to, reasonable attorneys' fees and litigation costs, for personal injuries, death and/or property damage, suffered by employees of either party or third parties arising out of or in any way connected with Independent Contractor's activities at the site or the performance of its obligations under this Agreement or any contract with Company, even if caused by the sole or concurrent negligence or fault of Company, or whether based on strict liability, unseaworthiness, warranty, or otherwise.

Paragraph One of the agreement describes its scope as "apply[ing] to all work currently being performed by Independent Contractor for

---

[2]Quality Fab subcontracted with Kelly Teel to perform the demolition. Plaintiffs Smith and Hawkins were employed by Teel.

[3]ADM also joined International Indemnity Company, Quality Fab's liability carrier, as third-party defendant.  International Indemnity was later dismissed on summary judgment for lack of coverage of this incident. That dismissal is not challenged and therefore, International Indemnity is not a party to this appeal.

Company and all existing and future work orders and purchase orders entered into between the parties."

The case went to trial. Thereafter, while the matter was under submission, ADM settled with Hawkins. The district court then entered judgment in favor of ADM, dismissing Smith's claim. The district court then granted summary judgment in favor of ADM on its third-party complaint against Quality Fab, based on the indemnification agreement, and entered judgment in the amount of $35,000, the stipulated amount of ADM's attorneys' fees and costs incurred in defense of the claims by Smith and Hawkins. The district court held, as a matter of law, that the indemnity agreement met the requirements of a binding contract under Louisiana law. The district court also held that the agreement was not ambiguous as to its terms, that those terms contemplated the demolition work performed by Quality Fab's subcontractor on June 3, 1993, and therefore, there was no unresolved question of material fact as to the intent of the parties. Quality Fab appeals from the summary judgment against it for ADM's attorneys' fees and costs, arguing that the indemnification agreement is not a valid contract under Louisiana law and in any event does not cover the work performed by it on June 3, 1993.

## II.

### LAW & ANALYSIS

This Court reviews a district court decision to grant summary judgment *de novo*, applying the same standard as the district court. *Wynn v. Washington National Insurance Company*, 122 F.3d 266, 268

(5th Cir. 1997), *citing Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code Ann. art. 1906. (West 1987). "Four elements are required for a valid contract: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430 n. 4 (5th Cir. 1996), *citing Keller v. Sisters of Charity*, 597 So.2d 1113, 1115 (La. Ct. App. 1992), and La. Civ. Code Ann. arts. 1918, 1927, 1966, 1977. Whatever the differences might be between Louisiana Civil Law and the common law in other jurisdictions, both require mutuality of obligation to form a contract. *Leger v. Tyson Foods, Inc.*, 670 So.2d 397, 401 (La. App. 3 Cir. 1996).

Quality Fab argues that the indemnity agreement does not specify a certain object, because the operation of its terms depended upon the formation of a future contract which might or might not be formed depending solely upon the will of ADM. In other words, the indemnification agreement is not a valid contract, because the indemnification provision will not become operative, unless ADM hires Quality Fab to provide some future service, which may or may never occur, depending solely on the whim of ADM.

It is true that Louisiana law recognizes the enforceability of clear and unambiguous indemnity contracts. *See Soverign Ins. Co.*

**4**

*v. Texas Pipe Line Co.*, 488 So.2d 982, 984 (La. 1986); *Polozola v. Garlock, Inc.*, 343 So.2d 1000, 1003 (La. 1977); *Commander v. BASF Wyandotte Corporation*, 978 F.2d 924, 926 (5th Cir. 1992). However, in the cases cited the indemnity agreement was part of a larger contract for the performance of a specific object. In contradistinction, this case involves a stand-alone indemnity agreement, wherein the indemnification will be part of the indemnitor's obligation under some unspecified future contract that may or may not be awarded. The difference is that in the Louisiana cases the agreement to indemnify is given as part of an ongoing bargain (i.e., A agrees to do Y for B in return for X number of dollars and in addition A will indemnify B for any harm caused while A is doing Y for B), while in this case the agreement to indemnify is given independently in connection with no specific future act which might give rise to the duty to indemnify (i.e., A agrees to indemnify B for any harm caused while A is performing any duty under some future contract with B, assuming that B ever enters into a contract with A in the future, which of course, B is under no obligation to do).

The real problem with this indemnity contract is not the lack of a specific object but its lack of mutual obligation. Quality Fab's obligation is apparent, i.e., it must indemnify ADM if ADM ever contracts with Quality Fab in the future. However, in return for that promise, ADM has taken on no corresponding obligation (e.g., a promise to use Quality Fab exclusively for maintenance or demolition services at the Destrehan facility). The prologue of

**5**

the contract states that Quality Fab's promise to indemnify is given

> "[i]n consideration of the work orders and purchase orders issued and to be issued by the Company to Independent Contractor, the agreements set forth herein and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged ...."

The problem with this recitation is that it does not indicate that ADM actually gave Quality Fab anything new in response to or as inducement for its promise to indemnify. Any past purchase orders, work orders or other consideration cannot provide the necessary cause for a subsequent contract, because past consideration was given as inducement for past performance. Any future work orders or purchase orders are not cause for Quality Fab's promise to indemnify, because there is no obligation on ADM's part to ever contract with Quality Fab again. In short, ADM promised nothing at all in the future and made no contemporaneous promise which would amount to a mutual obligation under the indemnity agreement, and therefore, that agreement is not a valid contract. Hence the judgment of the district court must be reversed. ADM alleged no basis for indemnification other than the above indemnification agreement, therefore, we reverse and remand for entry of judgment in favor of Quality Fab on ADM's third-party complaint against Quality Fab.

REVERSED and REMANDED.